WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Federal Trade Commission, | No. CV-17-02535-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Electronic Payment Solutions of America Incorporated, et al., | |
| Defendants. | |

This matter is before the Court on seven Motions filed by the parties.[1] Defendants Electronic Payment Systems, LLC ("EPS") and Electronic Payment Transfer, LLC ("EPT") filed a Motion to Transfer Venue to the District of Colorado (Doc. 20). Defendants John Dorsey ("Dorsey"), Thomas McCann ("McCann"), and Michael Peterson ("Peterson") (collectively, "Individual Defendants") filed a Joinder to that Motion (Doc. 21). Plaintiff, the Federal Trade Commission ("FTC"), filed a Response in opposition to the Motion (Doc. 32) and all the Defendants filed a Reply. (Doc. 34). The FTC filed a Motion to Strike Affirmative Defenses of Defendants Dynasty Merchants LLC ("Dynasty") and Nikolas Mihilli ("Mihilli") (Doc. 59). No response was filed to that Motion. Defendant Electronic Payment Solutions of America Incorporated ("EPSA") filed a Motion to Dismiss the cross-claims filed against it by Defendants EPS and EPT (Doc. 69). EPS and EPT filed a Response (Doc. 71). No reply to that Motion

---
[1] The various parties requested oral argument on many of the pending Motions. The Court denies these requests because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed.R.Civ.P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

was filed. The FTC filed a Motion to Strike the Answer to the Amended Complaint filed by the Individual Defendants, related to the jury demands in the Amended Answer (Doc. 97). The Individual Defendants filed a Response. (Doc. 103). The FTC filed a Second Motion to Strike Affirmative Defenses (Doc. 98) of Defendants Dynasty Merchants and Milhilli. Dynasty and Milhilli did not respond to the Motion. Finally, there are two Motions for extensions of time to effectuate service and to respond to cross-claims. (Docs. 115 and 116). While not all of the parties are involved in each of the respective pending Motions, the Court will consider all of the Motions in this Order.

**I.  Background**

The FTC brought this action under Section 13(b) of the Federal Trade Commission Act and the Telemarketing and Consumer Fraud and Abuse Prevention Act (the "Telemarketing Act"), seeking to obtain permanent injunctive relief, restitution, and other relief on behalf of consumers who were allegedly defrauded by all of the defendants involved here (hereafter, collectively, "Defendants"). (Doc. 85 at 3). The Complaint alleges that these Defendants perpetrated a deceptive telemarketing scheme (the "scheme") by inducing consumers to give their credit card information in exchange for promised interest income payments on amounts given. Defendants allegedly laundered the credit card transactions resulting in a total injury to consumers in an amount in excess of $7,300,000. (*Id.* at 4). Defendants allegedly created several fictitious companies and accounts in order to hide these transactions. (*Id.*)

In the credit card industry, merchant accounts are established in order to settle payment of credit card transactions. Independent sales organizations ("ISO") are involved in the payment processing of credit card transactions. Defendant EPS is an ISO that markets payment processing services to merchants. EPS is a Colorado company. (*Id.*) EPS allegedly sells payment processing services to merchants, served as the ISO to numerous entities involved in the present scheme, and set up and approved the merchant accounts for the fictitious companies. (*Id.*) EPS allegedly processed nearly $5.9 Million in fraudulent transactions over the course of the scheme. The FAC alleges that EPS used

three sales agents to market its services, Defendants Jay Wigdore ("Wigdore"), Michael Abdelmesseh ("Abdelmesseh"), and Mihilli. The FAC further alleges that these Defendants were participants in the scheme. (*Id.* at 6). EPS allegedly processed the consumer transactions through the fictitious accounts and then transferred the money to companies controlled by these Defendants. (*Id.*)

Defendant EPT is a Colorado company who is closely affiliated with EPS. EPS and EPT are allegedly controlled by the same principals. The FAC refers to EPS and EPT collectively as EPS. (*Id.* at 10). Defendant Dorsey is the CEO and co-owner of EPS. Defendant McCann is the managing member and co-owner of EPS. (*Id.* at 11). Defendant Peterson is the risk-manager of EPS. The FAC alleges that all three individuals were principal actors in the scheme. (*Id.*)

Defendant Electronic Payment Services, Inc. ("EP Services") is an Arizona corporation. Defendant EPSA is also an Arizona Corporation. EP Services and EPSA both allegedly acted as ISO sales agents for EPS and referred merchants to EPS in furtherance of the scheme. (*Id.* at 7-8). Defendant Wigdore, who resides in Arizona, is President of EP Services and a director of EPSA and allegedly acted as an ISO sales agent on behalf of EPS and participated in the scheme. (*Id.* at 9). The FAC alleges that Defendant Michael Abdelmesseh, who resides in Arizona, is a director of EPSA and acted as an ISO sales agent for EPS and participated in the scheme. (*Id.*)

Defendant Dynasty is an Arizona limited liability company. The FAC alleges that Dynasty processed merchant transactions using EPS's ISO services in furtherance of the scheme. (*Id.*) The FAC alleges that Defendant Mihilli, who resides in Arizona, is an officer of Dynasty and worked as a sub-agent of Wigdore and Abdelmesseh.

The FAC brings six causes of action against the various Defendants related to alleged violations of the FTC Act and the Telemarketing Act. The FTC seeks permanent injunctive relief, refund of monies paid, and restitution to consumers. (Doc. 84 at 56-57). On September 29, 2017, EPS filed their Answer to the FTC's Complaint and additionally filed cross-claims against Defendants EPSA Wigdore, Abdelmesseh, Mihilli, Dynasty,

and KMA Merchant Services, LLC.[2] (Doc. 22). The FTC filed their FAC on March 9, 2018. (Doc. 85). Since that time, all remaining Defendants have answered the FAC. (Docs. 89, 90, 91, 94, and 95).

**II.     Motion to Dismiss Cross-Claims**

Defendants EPSA and Wigdore move to dismiss the cross-claims asserted against them by EPS based on the duplicative nature of the cross-claims to a complaint filed in the District of Colorado and pursuant to Fed.R.Civ. 12(b)(6).

    **A.     Motion to Dismiss Legal Standards**

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). A complaint must contain a "short and plain statement showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). "All that is required are sufficient allegations to put defendants fairly on notice of the claims against them." *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991). Rule 8, however, requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

A complaint need not contain detailed factual allegations to avoid a Rule 12(b)(6) dismissal; it simply must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A complaint has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citation omitted).

In addition, the Court must interpret the facts alleged in the complaint in the light

---

[2] KMA Merchant Services, LLC has since been terminated from this case and is no longer a Defendant. (Doc. 108).

- 4 -

most favorable to the plaintiff, while also accepting all well-pleaded factual allegations as true. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). That rule does not apply, however, to legal conclusions. *Iqbal*, 129 S.Ct. at 1949. A complaint that provides "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will a complaint suffice if it presents nothing more than "naked assertions" without "further factual enhancement." *Id*. at 557.

### B. Duplicative Complaints

Federal courts "retain broad powers to prevent duplicative or unnecessary litigation." *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). "There is a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Systems, Inc. v. Medtronic, Inc.,* 678 F.2d 93, 94-95 (9th Cir. 1982). "A suit is duplicative if the claims, parties, and available relief do not significantly differ between the two actions." *iStar RC Paradise Valley LLC v. Five Star Dev.*, No. CV-10-2191-PHX-GMS, 2011 WL 4852293, at *8 (D. Ariz. Oct. 13, 2011) (quoting *Barapind v. Reno,* 72 F. Supp. 2d 1132, 1145 (E.D. Cal. 1999) (internal citation omitted)). Dismissal of the second action is proper "when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Systems,* 678 F.2d at 95.

### C. Discussion

Cross-claim Defendants Wigdore and EPSA argue that the cross-claims filed against them in this case are identical to the complaint filed against them in the District of Colorado, and thus that the duplicative claims filed in this District should be dismissed.[3]

As explained above, EPS brought suit against these Defendants in the District of

---

[3] The FTC, although not party to the Colorado action, also believes the cross-claims asserted in this case should be dismissed as they are identical to the claims asserted in the Colorado case and because EPS has impermissibly mixed a private dispute into an FTC enforcement action. (Doc. 32 at 11). The FTC cites numerous cases for their proposition that courts have the authority to dismiss private cross-claims and third-party claims brought within a government enforcement action.

Colorado (the "Colorado case") in September of 2014. The FTC subsequently filed suit against the Defendants, including EPS, in July of 2017. With their Answer to the FTC Complaint, EPS filed cross-claims against Wigdore, Abdelmesseh, and EPSA that largely mirrors the complaint in the Colorado case. (Doc. 22).

The Court notes that the relevant portions of the complaint filed by EPS and EPT in the District of Colorado and the cross-claims filed in this case are nearly identical. Both list the same or very similar causes of action against Defendants EPSA and Wigdore. These cases of action relate to alleged breaches of the contractual obligations of the parties, including: failing to sell EPS's processing services; failure to offer a right of first refusal pursuant to the contract; encouraging merchants to obtain services through other providers; competing with EPS; and accepting residual payments that they were not entitled to receive. (Docs. 22 and 34-1).

EPS even acknowledges the duplicative nature of its cross-claims. In a footnote on the first page of their cross-claims, EPS states that it "believes all claims related to this case should be heard in the U.S. District Court for the District of Colorado. EPS is asserting its crossclaims in this case in the event that EPS is unable to pursue them in the case previously filed against the above defendants in Colorado, where EPS believes both cases should be consolidated and pursued."[4] (Doc. 22 at 51-52). EPS also acknowledges in their Response to the current Motion that "the merchants and transactions involved in the FTC's later-filed Arizona case are all involved in the EPS' first-filed Colorado case." (Doc. 71 at 3). EPS additionally states that it "does not dispute the general proposition that a party should not divide its claims between different courts," and "also acknowledges that its crossclaims in the later-filed Arizona case closely mirror EPS' claims filed in the first-filed Colorado case." (*Id.* at 3-4).

EPS spends a significant portion of its response in opposition to the Motion to Dismiss discussing the benefits they perceive from the Court granting the collective

---

[4] EPS also appears to argue that this Court has the authority to consolidate the present action with the Colorado action. The decision of whether to consolidate the matter lies with the District Court in Colorado. *See* Fed.R.Civ.Pro. 42.

- 6 -

Defendants' Motion to Transfer Venue. In that sense, they agree that the current motion should be granted to the extent that their cross-claims here would be dismissed, without prejudice, in order that the case already filed in Colorado may proceed.

Here, EPS has filed duplicative claims, in more than one district, with similar parties and relief sought. While EPS is correct that it could not prevent the FTC from filing in Arizona, that fact does not allow it to assert claims against Defendants here that it has already asserted in another federal district. Therefore, in its discretion, the Court will grant Defendants' Motion and dismiss the Cross-Claims filed by EPS against Wigdore, Abdelmesseh, and EPSA.

### III. Motion to Transfer Venue

Defendants EPS and EPT move to transfer this case to the District of Colorado pursuant to 28 U.S.C. § 1404(a). The Motion also states that the "FTC's case should be consolidated with the pre-existing Colorado case." (Doc. 34 at 13). For reasons stated below, the Motion will be denied.

#### A. Legal Standards

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "A district court has discretion to decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504 (1947)). The statute "gives the Court discretion to transfer an action to another venue, even if venue is proper in this District, for the convenience of the parties and witnesses and in the interest of justice." *Johnson v. Law*, 19 F.Supp.3d 1004, 1010 (S.D. Cal. 2014). However, dismissal based on the doctrine of forum non conveniens is a "drastic exercise" of a court's power. *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011). A motion under this statute requires the Court to consider multiple factors in deciding whether transfer is appropriate in a given

case. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). For dismissal of an action based on forum non conveniens, "the court must examine: (1) whether an adequate alternative forum exists, and (2) whether the balance of private and public interest factors favors dismissal." *Lueck*, 236 F.3d at 1142. Additional factors to be considered include: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Id.* at 498-499. There is a "strong presumption in favor of plaintiff's choice of forum" which the defendant may overcome only by showing that the private and public interest factors weigh *heavily* in favor of litigation in the foreign forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981).

### B. Discussion

Defendants EPS and EPT move this Court, in the interest of justice and for the convenience of the parties, to transfer venue of this case to the District of Colorado. (Doc. 20). Defendants Dorsey, McCann, and Peterson have joined in this Motion. (Doc. 21). These moving Defendants argue that significant factors weigh in favor of granting their Motion. Defendants argue that the parties' contacts in Colorado are significant, that EPS' headquarters are located in Colorado, and that the factors indicate that the "court's subpoena power and a less congested District Court in Colorado establish that Colorado is a more convenient venue." (Doc. 20 at 5). The FTC opposes this Motion and argues that the Defendants have not met their heavy burden of showing that a change of venue is warranted here. The Court will assess the factors to determine whether transfer of venue is appropriate.

### 1. Personal Jurisdiction

The FTC does not dispute that this case could have been brought in the District of

Colorado. (Doc. 32 at 4). There is also no dispute that Colorado would retain personal jurisdiction over all of the defendants. *See* 15 U.S.C. § 53(b); *Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1416 (9th Cir. 1989) (holding that a relevant forum is not the state in which the suit was initially brought, but rather the entire United States for suits brought pursuant to a federal statute authorizing national service). Defendants also point out that a number of significant events related to this case occurred in Colorado, and argue that the "Defendants would have made the misrepresentations and provided the false documents to EPS in Colorado." (Doc. 20 at 6).

Defendants' contention that their business connections "throughout the United States" supports transferring venue to Colorado is neutral at best. Indeed, Defendants cite case law which states that any federal jurisdiction would have personal jurisdiction over them in a suit brought pursuant to the FTC. Defendants also argue that the FTC "seems to agree that jurisdiction and venue are proper in Colorado." (Doc. 20 at 7). This contention is based on the FTC's decision to send a draft complaint containing a District of Colorado case caption to EPS. The FTC never filed suit in Colorado. That the FTC decided to file suit in Arizona after sending a draft complaint to EPS with a Colorado case caption does not weigh in favor of granting the Motion. Defendants have not met their burden of showing that this Court does not have personal jurisdiction over each of them.

### 2. **Location of the Parties and Non-Party Witnesses**

Defendants argue that Colorado is the more proper venue because the KMA-Wigdore Defendants have substantial contacts with Colorado. (Doc. 20 at 12). Moreover, they state that while many of the entities involved in this matter previously were associated with or incorporated in Arizona that those entities have since dissolved. Defendants also argue that Colorado would be a more convenient venue for the FTC, as "Denver, Colorado is a slightly more convenient location for travel from Washington, DC than is Phoenix, Arizona." (Doc. 20 at 13). As to non-party witnesses, EPS states that it anticipates calling at least one non-party witness from Colorado, and possibly a bank,

which is headquartered in Utah. (Doc. 20 at 14).

The FTC points out that this Court has no more or less powers than the District of Colorado to compel attendance of unwilling non-parties to participate in the proceedings. Subsequent to the filing of their Response, the FTC filed two supplements to their Response. (Docs 70 and 83). The FTC points out that none of the EPS Defendants listed a single non-party witness residing in Colorado in their MIDP responses. (Docs. 39 and 40). Moreover, Defendants EPSA, EP Services, and Wigdore list six non-party witnesses in their MIDP, all of whom are Arizona residents. The Court also notes that subsequent to the briefing on the current Motion, judgment was entered against Defendant KMA who has been terminated from the case.[5]

While Colorado may be a more convenient forum for some of the Defendants, it appears that all of the non-party witnesses are located in Arizona, with the possible exception of one bank located in Utah. This factor does not weigh heavily in favor of transferring venue.

### 3. Location of Contract Execution

EPS next argues that venue is proper in Colorado because that is where the contracts between it and the other Defendants were negotiated and signed. Moreover, EPS argues that the contract stipulated to the applicability of Colorado law and venue. However, as the FTC argues, and as EPS acknowledges, the present FTC action is not based on contracts between EPS and the other Defendants, but rather is based on alleged violations of the FTC Act. Therefore, this factor is also neutral.

### 4. Plaintiff's Choice of Forum

Defendants argue that, while a plaintiff's choice of forum should generally be afforded great weight, the FTC's decision here should be given "minimal consideration" because "when the plaintiff's choice is not its home forum, the presumption in the plaintiff's favor applies with less force." (Doc. 20 at 9). Defendants also argue, without citing to any relevant authority, that the FTC's case is "similar to a derivative or class

---

[5] KMA was terminated from the case on June 13, 2018.

- 10 -

action suit" and thus should not be afforded great weight. For this proposition, Defendants cite to *Alduni v. Hart*, 774 F.3d 622, 628 (9th Cir. 2014) (derivative shareholder action against board of directors) and *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (class action employment lawsuit).

The FTC argues that the Act allows them to file suit in this District. *See* 15 U.S.C § 53(b) ("the Commission by any of its attorneys designated by it for such purpose may bring suit in a district court of the United States to enjoin any such act or practice"). Moreover, the FTC points out that Defendants cite to no authority for their argument that an FTC action should be treated like a class action or shareholder derivative suit for purposes of determining venue. Defendants have not met their burden as to this factor. Therefore, this factor weighs in favor of FTC's choice of venue.

### 5. Other Factors

Defendants also argue that Colorado is an appropriate venue because the Colorado court is familiar with the applicable law. Likewise, the FTC points out, Arizona is an appropriate venue in this regard[6]. This factor is neutral.

Lastly, in their Reply in support of their Motion to Transfer Venue, Defendants state in their conclusion that the "relevant transfer factors support moving the case to Colorado or ***are, at least, neutral***." (Doc. 34 at 13) (emphasis added). This statement certainly does not convince the Court that Defendants have met their high burden of showing a transfer of venue is appropriate here. Consequently, Defendants have not met their high burden of showing that private and public interest factors weigh heavily in favor of litigation in the District of Colorado such that this Court should exercise the drastic remedy of dismissing Plaintiff's case and transferring venue. Therefore, Defendants' Motion to Transfer Venue is denied.

### IV. Motion to Strike Affirmative Defenses

The FTC also filed two Motions to Strike affirmative defenses (Docs. 59 and 98) of Defendants Dynasty and Mihilli. The first Motion relates to the first Answer that was

---

[6] The FTC notes that, according to PACER, the District of Arizona has adjudicated 42 FTC cases since 2000, while the District of Colorado has adjudicated six. (Doc. 32 at 9).

- 11 -

filed by these Defendants. The FTC subsequently filed their FAC and these Defendants filed an Answer to the FAC. The FTC did not withdraw the original Motion to Strike (Doc. 59) and the Court finds that the Motion is moot based on the filing of the FAC and the new Answer. Therefore the Court will deny the first Motion as moot.

With regard to the second Motion, there was no response filed and the time to do so has expired. *See* LRCiv 7.2(c) (providing that a response must be filed within fourteen days after service of the motion).

The FTC requests that the Court strike all nine of the affirmative defenses asserted in the Answer, including: limitation of action, waiver, laches, estoppel, failure of consideration, fraud, illegality, license, and statute of frauds. (Doc. 95 at 3). The affirmative defenses are all listed in one sentence without further explanation. The FTC argues these affirmative defenses are "insufficiently plead, redundant, and immaterial." (Doc. 98 at 1).

As noted above, Defendants Dynasty and Mihilli, who are represented by counsel, have not responded to this Motion and the time to do so has expired. The Court construes their failure to respond as consent to the granting of the motion. *See* LRCiv 7.2(i) (failure to file a response to a motion may be deemed a consent to the granting of the motion and the Court may dispose of it summarily); *see also Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995) ("[f]ailure to follow a district court's local rules is a proper ground for dismissal."); *Hensley v. Bank of New York Mellon*, 2013 WL 5447547 (D. Ariz. 2013). The Court therefore construes these Defendants' decision not to respond as consent to the granting of the motion and will grant it summarily.

The Court notes that the FTC has filed four Motions to Strike in this case. The Court previously ruled on two other Motions to Strike filed by the FTC as it related to other Defendants. (Doc. 67). Subsequent to that Order, the FTC filed their FAC and the Defendants filed new Answers, making the first Answers obsolete and the Court's first Order on the matter unnecessary. Moreover, this is the second time that a Motion to Strike has not been contested. In the future, the FTC will need to certify that it has met

and conferred with the opposing party before filing any similar motions with the Court.

## V. Miscellaneous Motions

The FTC also moves to strike the jury demand asserted by Defendants Dorsey, McCann, and Peterson in their Answers to the First Amended Complaint. (Doc. 97). The Court previously struck these jury demands in its scheduling order on February 1, 2018. (Doc. 78). Nevertheless, in filing their Answers to the FAC, these Defendants reasserted their demand for a jury trial. (Docs. 89, 90, and 91).

In response to the Motion to Strike, Defendants state that they have no additional authority to provide to the Court as whether the allegations in the FTC's FAC entitle them to a jury. However, Defendants ask the Court to "reconsider its prior ruling" related to the jury demand. (Doc. 103 at 2). Defendants have not filed a Motion to Reconsider the Court's previous ruling, and the time to do so has expired. LRCiv 7.2(g) ("Absent good cause shown, any motion for reconsideration shall be filed no later than fourteen (14) days after the date of the filing of the Order that is the subject of the motion.") Therefore, the FTC's Motion to Strike Defendants' jury demands in their Answers to the FAC will be granted.

Lastly, before the Court are two Motions for Extension of Time. The first is a Motion for Extension of Time to serve a third-party Defendant. (Doc. 115). This Motion is stipulated to by all parties and will therefore be granted. The second is a Motion for Extension to Answer the cross-claims. (Doc. 116). This Motion is moot based on the Court's ruling granting the Motion to Dismiss the cross-claims. Therefore, that Motion will be denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that EPSA's Motion to Dismiss the Cross-Claims (Doc. 69) is **GRANTED**.

**IT IS FURTHER ORDERED** that EPS and EPT's Motion to Change Venue/Transfer Case to the District of Colorado (Doc. 20) is **DENIED**.

**IT IS FURTHER ORDERED** that the FTC's third Motion to Strike Affirmative

Defenses (Doc. 59) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that the FTC's Motion to Strike Jury Demand (Doc. 97) is **GRANTED**. The jury demands are **STRICKEN** from Defendants Dorsey, Peterson, and McCann's Amended Answers (Docs. 89, 90, and 91).

**IT IS FURTHER ORDERED** that the FTC's fourth Motion to Strike Affirmative Defenses (Doc. 98) is **GRANTED**. The following affirmative defenses are **STRICKEN** from the Defendants Dynasty and Mihilli's Answer to the FAC (Doc. 95): limitation of action, waiver, laches, estoppel, failure of consideration, fraud, illegality, license, and statute of frauds.

**IT IS FURTHER ORDERED** that EPS and EPT's Motion for Extension of Time (Doc. 115) is **GRANTED**. The deadline for Defendants/Third-Party Plaintiffs EPS and EPT to serve Kamal Abdelmesseh is extended to and including August 31, 2018.

**IT IS FINALLY ORDERED** that Wigdore and EPSA's Motion for Extension of Time to Answer the Cross-Claims (Doc. 116) is **DENIED** as moot.

**Dated** this 31st day of July, 2018.

Honorable Diane J. Humetewa
United States District Judge